UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Conservation Law Foundation, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Bill Willard, Incorporated<br><br>Defendant. | ) <br>)<br>) Case No. 1:17-cv-10141<br>)<br>) ~~[Proposed]~~ Consent Decree<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

WHEREAS, Plaintiff Conservation Law Foundation, Inc. ("CLF") filed this action on January 26, 2017, against Bill Willard, Incorporated ( "Bill Willard" or "Defendant"), alleging violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act"), and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs;

WHEREAS, CLF is a regional, nonprofit environmental organization;

WHEREAS, Bill Willard owns a construction sand and gravel (exposed aggregate) facility located at 1010 Ryan Rd., Florence, MA 01062 (the "Facility");

WHEREAS Jonathan R. Goldsmith, Esq. has been appointed receiver of Bill Willard, pursuant to an agreement of the shareholders of Bill Willard in Civil Action 1780CV0050 now pending in the Superior Court for Hampshire County, Massachusetts.

WHEREAS, the Facility is not currently operating and the underlying real property is for sale, but significant materials remain on the areas used for industrial activity at the Facility and those materials are exposed to stormwater;

WHEREAS, CLF alleged that the Facility discharged stormwater and process wastewater associated with its industrial activity without a Clean Water Act discharge permit to waters of the United States;

WHEREAS, CLF alleged in its complaint (the "Complaint") and in a letter (the "Notice Letter") dated January 26, 2017, sent to Bill Willard, Incorporated, that Bill Willard, Incorporated violated Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. § 1311(a) and 1342(p)(2)(B);

WHEREAS, Bill Willard has engaged a qualified engineering consultant to undertake the preparations necessary to apply for a stormwater permit for the Facility;

1

WHEREAS, Bill Willard has agreed to develop and implement a Stormwater Pollution Prevention Plan and to file a Notice of Intent to seek coverage under the 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity for the Facility;

WHEREAS, Bill Willard has agreed to prevent any discharges of process wastewater unless such discharges are covered under and in accordance with a Clean Water Act discharge permit; and

WHEREAS, CLF and Bill Willard (collectively, "the Parties" or individually "Party") agree that resolution of this matter without further litigation is in the best interest of the Parties and the public, and that entry of this Decree is the most appropriate means of resolving this action.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Bill Willard of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). An actual, justiciable controversy exists between Plaintiff and Defendant. The requested relief is proper under 28 U.S.C. § 2201, 28 U.S.C. § 2202 and 33 U.S.C. § 1365(a).

2. Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the alleged events giving rise to this action occurred at the Facility, located at 1010 Ryan Rd., Florence, MA 01062 and in the Middle Connecticut (Massachusetts) watershed, which are located within this judicial district and plaintiff resides in the District of Massachusetts.

## II. COMPLIANCE PROGRAM

3. Neither the Facility nor the Defendant shall cause or allow process wastewater to discharge from the Facility, except in compliance with applicable federal and state statutes, regulations, and permits. Defendant and the Facility shall comply with the Clean Water Act.

4.      Within thirty (30) days of the date on which this Consent Decree is entered by the Court (the "Effective Date"), Defendant shall apply for coverage under the National Pollutant Discharge Elimination  System ("NPDES") 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity ("2015 MSGP") by submitting a complete and accurate Notice of Intent ("NOI") to the United States  Environmental Protection Agency ("EPA") in accordance with this Decree, and shall send a copy of the NOI to CLF within ten days after it is provided to EPA.   In making such application the Defendant may claim Inactive Status on the NOI as detailed in Section 8.J.8.1 of the 2015 MSGP. Defendant's NOI shall either include a URL linking to the online electronic copy of the Facility's Stormwater Pollution Prevention Plan  ("SWPPP"), or shall otherwise comply with the alternative option provided by the EPA's new eNOI (in lieu of posting an online SWPPP and URL).

5.      Defendant shall comply with the 2015 MSGP at the Facility. Defendant shall develop a written SWPPP according to the requirements in Parts 5 and 8.J of the 2015 MSGP by no later than thirty (30) days after the Effective Date. The MSGP, as it may be updated from time to time, is incorporated into this Consent Decree by reference. Development of  the SWPPP shall include, at minimum, the following:

   a.  Formation of a pollution prevention team of qualified personnel who will  be responsible for preparing the plan, implementing practices from the plan, and ensuring compliance with the MSGP.

   b.  Identification of potential stormwater pollution sources at the Facility, and selection and installation of appropriate control measures that minimize the discharge of pollutants during storm events for each of these sources.

   c.  Development of procedures for conducting required inspection and monitoring activities, as well as regular maintenance of control measures, at the Facility.

6.      Defendant has hired a qualified engineering consultant to develop its SWPPP. Defendant will include the consultant's reasonable and necessary recommendations in its SWPPP.

7.      Defendant shall provide a copy of its SWPPP to CLF for review and comment by no later than thirty (30) days from the date this Decree is executed by the Parties but shall not be required to incorporate CLF's recommendations or comments into its SWPPP .

8.      If Defendant no longer operates the Facility and prevents exposure of industrial materials (including earth materials) to stormwater such that discharges of stormwater associated with industrial activity no longer occur at the Facility, then Defendant may file a Notice of Termination of coverage under the 2015 MSGP.  Prevention of exposure of industrial materials to stormwater must include, at a minimum either: (a) removing piles of earth materials and stabilizing the underlying land with appropriate plantings of vegetation, or (b) stabilizing the existing exposed piles of exposed earth materials with appropriate plantings of vegetation. If the Notice of Termination is accepted by EPA, Defendant's monitoring obligations under Section III, below, shall cease.

3

9.      If the Defendant's claim of Inactive Status on the NOI as detailed in Section 8.J.8.1 of the 2015 MSGP is accepted by EPA, Defendant's monitoring obligation under Section III below shall cease except as required by federal and state statutes, regulations, or the Defendant's permits.

## III.    MONITORING PROGRAM

10.      Defendant shall monitor and sample its stormwater runoff, pursuant to the MSGP for pollutants identified in the  MSGP for Sector J (i.e.,  Total Suspended Solids and Nitrate plus Nitrite Nitrogen) commencing on the Effective Date. This monitoring  must be performed pursuant to the requirements of the MSGP and include, at a minimum, the stormwater collection areas where runoff is generated, received, stored, treated, or disposed and that are exposed to either precipitation or stormwater runoff.

11.      Defendant shall also comply with all other inspection and monitoring requirements of the MSGP including, but not limited to, those of Part 3 including, but not limited to, the in-house inspection of control structures and storage areas after rain events.

12.      Defendant may take additional samples of its stormwater discharges.  If it does so, Defendant will send a copy of each such inspection and/or sampling result to CLF no  later than ten (10) days after receipt.

13.      During the first year after the Effective Date of this Decree, Defendant shall implement control measures, if any, and/or maintain control measures at the Facility as necessary to meet the benchmark levels for MSGP Sector J (i.e.,  Total Suspended Solids and Nitrate plus Nitrite Nitrogen). If, after the end of twelve (12) months from the Effective Date of this Decree, Defendant's quarterly monitoring result for any parameter exceed MSGP Part 8.J benchmark levels, Defendant agrees to pay stipulated additional Supplemental Environmental Project payments as set forth in Paragraph 18 of this Decree. Such stipulated additional Supplemental Environmental Project ("SEP") payments shall be calculated based on the number of monitoring parameters exceeded during a quarterly monitoring event, not on the number of discharge locations where a monitoring parameter is exceeded (i.e., an exceedance of the TSS monitoring parameter at three separate discharge locations sampled during one quarterly monitoring event shall result in one stipulated additional Supplemental Environmental Project payment, rather than three).

14.      During the life of the Decree, CLF, through representatives, and at its own expense may conduct one (1) site inspection every year at the Facility. The site inspection shall occur during normal business hours and upon three (3) business days written notice including notice to Defendant. During the site inspection, CLF representatives may collect water and soil samples, take photos at the Facility, and review the Facility's SWPPP and records and reports kept pursuant to the SWPPP in order to monitor compliance with the MSGP and the Decree. Any such samples shall be split samples with one of the split samples remaining in the possession of Defendant. CLF shall provide the Defendant copies of all photographs taken by CLF within 10 days of the inspection.  CLF shall further provide the Defendant with copies of any analytical reports for any samples taken from the Facility within 10 days of receipt of such reports. In order to contain costs and minimize the potential for adversarial postures during the site inspections, the site inspections shall be conducted by the parties' expert consultants without the physical presence

4

of either Party's legal counsel.  In addition, if Defendant files a Notice of Termination of coverage under the MSGP pursuant to Paragraph 8, above, CLF may conduct one additional site visit within six months of receipt of such Notice of Termination to confirm that exposed materials have been properly stabilized and discharges of stormwater associated with industrial activity from the Facility have been eliminated.

15.     During the life of the Decree, Defendant shall copy CLF and CLF shall copy the Defendant on all documents  related to stormwater quality or Clean Water Act compliance regarding the Facility submitted to the EPA or MASSDEP, or any local government. Such documents  shall be provided to CLF or the Defendant within ten (10) days of being sent to the agencies and/or local government.

## IV.    SUPPLEMENTAL ENVIRONMENTAL PROJECT

16.     Defendant shall  make a Supplemental Environmental Project ("SEP") payment totaling Twenty Five Thousand and No/100 Dollars ($25,000) to the Connecticut River Conservancy, Attn: Andrew Fisk, 15 Bank Row St., Greenfield MA 01301, for the environmental protection and restoration of, or other environmental benefit to, the Middle Connecticut (Massachusetts) Watershed. Defendant shall notify CLF in writing concurrently each time a SEP payment is made and provide a copy of each check. Payment under this paragraph shall be made within thirty (30) days of closing the sale of the underlying real property, or, if the underlying real property is not sold, according to the following schedule:
>        a. $12,500.00 upon approval of this Decree as detailed in Section VII herein.
>        b. $12,500.00 on or before 9/1/2017 .

17.     For each missed deadline included in this Decree, excluding missed payment deadlines (discussed in Paragraph 21 below), Defendant shall make an additional SEP payment to the Connecticut River Conservancy in the amount of five hundred ($500) for the environmental protection and restoration of, or other environmental benefit to, the Middle Connecticut (Massachusetts) watershed. Payment of each such additional amount shall be due fourteen (14) days following each missed deadline. Defendant shall notify CLF in writing concurrently each time a payment is made and provide a copy of each check. Pursuant to Paragraph 43, below, Defendant shall not be required to make such additional SEP payment for missed deadlines arising from a Force Majeure event.

18.     For each exceedance of an MSGP benchmark as described in Paragraph 13 of the Decree, above, Defendant will make an additional SEP payment to the Connecticut River Conservancy in the amount of two hundred fifty and no/100 hundred dollars ($250.00) for the environmental protection and restoration of, or other environmental benefit to, the Middle Connecticut (Massachusetts) watershed.  Payment of each such additional amount  shall be due fourteen (14) days following each exceedance.   Provided however that the cumulative amounts of such payments shall not exceed the sum of $5,000.00.

19.     None of the SEP payments shall be disbursed to CLF.

## V.    LIQUIDATED ATTORNEY FEES AND COSTS

20.     Defendant shall  pay to CLF a total sum payment of Twenty Five Thousand

Dollars ($25,000.00) as full and complete satisfaction of CLF's claim for attorneys' fees and costs incurred to date in this matter and for reasonable anticipated costs to be incurred in compliance monitoring and case management over the term of the Decree. Payment under this paragraph shall be made within thirty (30) days of closing the sale of the underlying real property, or, if the underlying real property is not sold, according to the following schedule:

       a. $15,000.00 upon approval of this Decree as detailed in paragraph VII herein.;

       b. $10,000.00 on or before 9/1/2017.

21.    In the event that any payment owed by Defendant under the Decree is not made on or before the due date, Defendant shall be deemed in default of its obligations under this Decree. In addition to a continued requirement to make said payment, Defendant shall pay to CLF liquidated attorney fees of five hundred dollars ($500) for every seven days payment is late.

## VI.    EFFECT OF DECREE

22.    CLF hereby covenants not to sue, releases and discharges Bill Willard and its past and present receivers, directors, officers, shareholders, consultants, receivers, employees, agents, partners, subsidiaries, affiliates, parent companies, representatives, consultants, servants, heirs, successors, administrators, assigns, attorneys, (from any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, past and future attorney's fees, past and future costs and the like, or any other claim or relief of any nature or kind (i) relating to, resulting from or alleging noncompliance with the Clean Water Act at the Facility occurring prior to the date the Court enters this Decree; (ii) for any violations that were alleged, or could have been alleged, in the Complaint; (iii) for the past conduct alleged to constitute violations in the CLF letter to Defendant dated October 21, 2016; and (iv) for past violations alleged in any CLF correspondence to Defendant dated prior to the date the Court enters this Decree concerning Defendant's facility and operations. Notwithstanding anything to the contrary contained herein, CLF retains all rights necessary to enforce the terms of this Decree, including by the filing of a lawsuit.

23.    Defendant Bill Willard, Incorporated covenants not to sue, releases and discharges CLF (and its subsidiaries, officers, directors, trustees, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past), its representatives, assigns, agents, employees, officers, and attorneys, including those who have held positions in the past from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with CLF's investigation of and actions regarding Bill Willard, Incorporated.

24.    Neither this Decree, nor terms thereof, nor performance of the terms thereunder by Defendant shall constitute or be construed as an admission or acknowledgment by Defendant of the factual or legal assertions contained in this Decree, the validity of the facts or determination contained in this Decree or CLF's Complaint. Neither this Decree, nor terms thereof, nor performance of the terms thereunder, shall constitute or be construed as an admission or acknowledgment by Defendant of any liability, or an admission of violation of any law, by Defendant or by its officers, directors, employees, agents, successors, or assigns.

25.    CLF does not, by consent to the Decree, warrant or aver in any manner that

6

Defendant's compliance with this Decree will constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

26.   **No Other Actions Pending:** The Parties acknowledge that he/she or it has not filed or otherwise initiated any action in a court of law or equity against any other Party named in this Decree.

## VII.   REVIEW AND TERM OF DECREE

27.   The Parties recognize that, Jonathan R. Goldsmith has been appointed receiver for the Defendant pursuant to an agreement of the Defendant's shareholders filed in Civil Action 1780CV0050. Accordingly, it is understood and agreed that the Receiver shall have no personal lability to any person for acts or omissions contemplated by this Consent Decree or any Order of the Court issued thereby or related thereto. Concurrent with the approval process detailed in Section VII herein, Goldsmith shall seek approval of the Superior Court for Hampshire County, Massachusetts to enter into this Decree. Upon approval by the Superior Court, the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. the Parties will jointly move the Federal District Court for entry of the decree. Therefore, after the signing of this decree by the Parties, the Parties shall jointly inform the Court of the decree, and CLF shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5 and Goldsmith shall file such paperwork as is necessary to obtain the Superior Court's approval. If for any reason any of the forgoing entities should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the forgoing entities to entry of this Decree.

28.   The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and the EPA. Therefore, after the signing of this decree by the Parties, the Parties shall jointly inform the Court of the decree, and CLF shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.

29.   Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), or upon DOJ's completion of its review process, whichever is sooner, the Parties will jointly move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court and shall terminate upon the following: (i) five years have passed from the Effective Date or (ii) the Facility is covered by a Clean Water Act NPDES permit and has been sold; and (iii) completion of all payment obligations set forth in this Decree. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## VIII.   MODIFICATION AND ENFORCEMENT OF DECREE

30.     This Decree may be modified only upon written consent of the Parties and the approval of the Court.

31.     The Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree. If the Court does not agree to retain jurisdiction over this matter, then this Consent Decree will remain in full force and effect between the Parties, and either Party may institute a new action in the United States District Court for the District of Massachusetts concerning their respective rights and obligations under this Decree.

## IX.    MISCELLANEOUS PROVISIONS

32.     This Decree shall remain in effect if Defendant relocates the Facility to a different location, provided that the new location falls within the jurisdiction of the Clean Water Act.

33.     Sections I, IV, V, VII, VIII, and IX of this Decree shall remain in effect if Bill Willard, Incorporated ceases to be the operator of the Facility, regardless of whether the Facility continues to operate or not.

34.     All payments pursuant to this Decree shall be made in form of a business check. In the event that any business check submitted is returned due to insufficient funds, late payment penalties may apply and all subsequent payments shall be made in the form of a certified bank check.

35.     Entire Agreement. This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

36.     Notices. Any notice, demand, copies of documents and other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and either (a) emailed, (b) personally served, (c) mailed by United States registered or certified mail, return receipt requested, postage prepaid, or (d) sent by a nationally recognized courier service (e.g., Federal Express) for next-day delivery, to be confirmed in writing by such courier. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given when (a) sent via email, (b) actually received or refused by the party to whom sent if delivered by courier, or (c) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for Plaintiff shall be sent to:

Zachary K. Griefen, Esq.
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
zgriefen@clf.org

8

Notices for Defendant shall be sent to:

Jonathan R. Goldsmith, Esq.
Receiver for Bill Willard, Inc.
1350 Main Street Suite 1505
Springfield, MA 01103

With a cc to:

Mark A. Tanner, Esq.
Bacon Wilson, P.C.
57 Center Street
Northampton, MA 01060
mtanner@baconwilson.com

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

37.     Authorization. Subject to the terms and conditions of this Decree each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

38.     Successors and Assigns. Except as otherwise provided for in this Agreement, this Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

39.     Interpretation. The provisions contained herein shall not be construed in favor of or against either Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto.

40.     Headings. The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

41.     Counterparts. Facsimile, electronic and scanned signatures shall be deemed to be originals for all purposes. Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective. This Agreement may be signed in counterparts.

42.     Severability. In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

43.     Force Majeure. For purposes of this Decree, a "Force Majeure event" is defined as any event arising from causes beyond the control of Defendant, including its contractors and

9

subcontractors, that delays or prevents the timely performance of any obligation under this Decree, except for obligations as provided in Paragraphs 16–18 and 20–21 of this Decree, notwithstanding Defendant's best efforts to avoid the delay. The deadline for the responsibility to perform any action under this Decree may be extended for up to the number of days of nonperformance caused by the Force Majeure event, provided that Defendant complies with the notice requirements of this paragraph. Examples of events which may constitute Force Majeure events include severe weather events, natural disasters, and national, state or regional emergencies. Examples of events that are not Force Majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, Defendant's financial difficulty in performing such work and acts or omissions attributable to Defendant's contractors or representatives.

If any event occurs which may delay or prevent the performance of any obligation under this Decree, caused by a Force Majeure event, Defendant shall notify CLF, at the address specified in Paragraph 36 above, within seven (7) business days after Defendant first knows, or should know, that the event might cause a delay. This written notice to CLF shall include, without limitation: (i) an explanation of the causes of any actual or expected delay or noncompliance; (ii) the anticipated duration of delay; (iii) the measures taken and to be taken by Defendant to prevent or minimize the delay or nonperformance; (iv) a proposed schedule for the implementation of such measures; and (v) a statement as to whether in the opinion of Defendant the Facility can continue to operate in a manner which will not violate this Decree.

If CLF agrees that a delay or anticipated delay in performance is attributable to Force Majeure, the time for performance of the obligations under this Decree that are affected by the Force Majeure event shall be extended for the period of time reasonably necessary to allow performance of the obligation to the extent the delay was caused by a Force Majeure event.

**CONSERVATION LAW FOUNDATION, INC.**

By: _____Date:_____
    Christopher M. Kilian, Vice President
    Conservation Law Foundation
    15 East State Street, Suite 4
    Montpelier, VT 05602

**BILL WILLARD, INCORPORATED**

By: _____Date:_____
    Jonathan R. Goldsmith, Esq.
    Receiver for Bill Willard, Inc.
    1350 Main Street Suite 1505
    Springfield, MA 01103

ENTERED and DATED this _25th_ day of _August_, 2017

_____
Honorable
United States District Judge

**CONSERVATION LAW FOUNDATION, INC.**

By: _____    Date: 6/26/2017
       Christopher M. Kilian, Vice President
       Conservation Law Foundation
       15 East State Street, Suite 4
       Montpelier, VT 05602

**BILL WILLARD, INCORPORATED**

By: _____    Date:_____
       Jonathan R. Goldsmith, Esq.
       Receiver for Bill Willard, Inc.
       1350 Main Street Suite 1505
       Springfield, MA 01103

ENTERED and DATED this_____day of_____, 2017

_____
Honorable _____
United States District Judge

11

**CONSERVATION LAW FOUNDATION, INC.**

By: _____ Date:_____

      Christopher M. Kilian, Vice President
      Conservation Law Foundation
      15 East State Street, Suite 4
      Montpelier, VT 05602

**BILL WILLARD, INCORPORATED**

By: _____ Receiver _____ Date: 6|2b|17

      Jonathan R. Goldsmith, Esq.
      Receiver for Bill Willard, Inc.
      1350 Main Street Suite 1505
      Springfield, MA 01103

ENTERED and DATED this_____day of_____, 2017

_____

Honorable _____
United States District Judge

11